**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Eli Erlick, | Case No. 23-cv-1017 |
| *Plaintiff,* | **FIRST AMENDED COMPLAINT** |
| v. | |
| Blaire White, | **(Jury Trial Demanded)** |
| *Defendant.* | |

Plaintiff, for her complaint, alleges as follows:

## PARTIES

1.     Plaintiff Eli Erlick (Ms. Erlick; she/her) is an activist, writer, and academic.

2.     Ms. Erlick is a resident of New York County, New York.

3.     Defendant Blaire White is a notorious YouTuber that promotes far-right conspiracy theories and has traded on the fact that she *is* transgender to push hatred against other members of the trans community.

4.     Ms. White pitches herself as a journalist.

5.     Ms. White holds herself out publicly as complying with basic journalistic standards in her reporting.

6.     Ms. White does, in fact, do basic journalistic diligence before reporting.

7.     That said, as set out below, Ms. White does not always heed what that diligence turns up before reporting.

8.     Ms. White is a resident of Austin, Texas.

## JURISDICTION AND VENUE

9.     The Court has diversity jurisdiction under 28 U.S.C. § 1332 because

the parties are fully diverse, and the amount in controversy exceeds $75,000.00.

10.     Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, as Plaintiff lives in this district and the harm at issue accrued in the district.

12.     Defendant White is subject to jurisdiction in New York because the statements at issue targeted Ms. Erlick in New York for harm specifically.

13.     Moreover, Defendant White routinely avails herself of New York for political purposes, whether through speaking engagements, political activities, or meritless political litigation, that, among other things, asserted claims under causes of action that literally do not exist (*see, e.g., Straka v Lesbian Gay Bisexual & Transgender Community Ctr., Inc.*, 2020 NY Slip Op 32116[U] (Sup Ct, NY County 2020)).

## FACTUAL ALLEGATIONS

**Background.**

14.     Ms. Erlick is a trans woman, activist, and graduate student.

15.     Defendant White has a history of attacking other trans individuals, recognized by New York Courts. "[S]ince January 2017, White has intermittently created and uploaded episodes of a video series entitled 'Triggering Tr[*]nnies' which features taunts of people who identify as 'trans.'. . . In this Court's view, all of these comments may be fairly described as 'queer slurs' because they were clearly intended as insults." *Straka v. Lesbian Gay Bisexual & Transgender Cmty. Ctr., Inc.*, 2020 N.Y. Slip Op. 32116 (N.Y. Sup. Ct. 2020).

16.     In or around August of 2022, Defendant White sent a private, social media message to Ms. Erlick stating her (White's) intention to create one of those videos about Erlick.

17.     That message read: "Hey Eli, any statement about the allegations of sexual abuse and/or your admitted plan to illegally give children drugs?  I'll be doing a video on this.  Thanks!"

18.     Ms. Erlick responded in relevant part by providing a link responding, among other things by linking a full response, saying,  "I wrote a response years ago before they [e.g. the person who made an accusation of sexual abuse] deleted their accusations."

19.     Defendant White and Ms. Erlick exchanged several more messages before the conversation concluded, demonstrating that Defendant White had seen, or had the opportunity to see, the message described above.

20.     As detailed below, Defendant White would go on to accuse Ms. Erlick of sexually abusing and — most importantly, including by Defendant White's own reckoning — causing the death of the person ("Danie") who made the accusation.

21.     The link that Ms. Erlick provided to Defendant White takes the viewer to a Tumblr post authored and published by Ms. Erlick on August 5th, 2016, and edited by Ms. Erlick in December, 2018.

22.     The top of the post, and immediately viewable upon clicking the link, indicates that Danie was alive.

23.     Upon information and belief, Defendant White read and understood

that Danie was alive.

24.   Danie **is** alive.

25.   Had Defendant White undertaken even the most cursory diligence — let alone industry standard diligence — she would have also been able to discover on her own that Danie was alive.

26.   Upon information and belief, Ms. White did undertake that diligence.

27.   Industry standard diligence, as will be shown through expert testimony, is that before reporting on a death, a journalist would confirm that the person **is, in fact, dead**.

28.   There are many ways to confirm such a fact.

29.   For example, before reporting on a death, a journalist could, and would check, among other things:

    a.   Check voter registrations;

    b.   Check social media;

    c.   Check death rolls.

30.   Had — and upon information and belief, when — Defendant White checked voter registrations, she should have found or in fact did find Danie actively voting in Oregon, including in the last year.  For example (with redactions):



(redactions added; unredacted version has been served on counsel for Defendant).

31.     Had — and upon information and belief, when — Defendant White checked social media, she would have found and in fact did find Danie actively posting comments on social media.  For example:



32.     Had — and upon information and belief, when — Defendant White checked death rolls, she would not have been able to confirm, and in fact did not confirm, Danie's death.

33.     As explained further below, Defendant White has fallen short of industry standard diligence before, and made public commitments to be better than that.

34.     Moreover, as to the underlying claim of abuse, upon reviewing the post linked above, Defendant White reviewed and saw Danie's own message admitting that she engaged in "chronic lying."

35.     Specifically, Danie stated:



36.     That is, Defendant White knew the source for her claim that Ms. Erlick engaged in "abuse" that lead to Danie committing suicide was a self-described "chronic l[iar]." *Accord, St. Amant v Thompson*, 390 US 727, 732 (1968) (noting actual malice "may be found where there are **obvious reasons to doubt the veracity of the informant** or the accuracy of his reports").

37.     Defendant White also reviewed further messages where Danie described how they "lied [them]self into" various situations.

38.     Defendant White also reviewed Ms. Erlick's offer to share — if the above was not enough — "a screenshot of Danie threatening to publicly accuse me of rape and abuse if I didn't give them money."

39.     Defendant White never asked.

40.     A reasonable journalist, in the circumstances above, would have asked for that document.

41.     That is, a "a media publication, broadcaster or journalist [is] responsible for observing the standards of information gathering and dissemination ordinarily followed by responsible parties." *Gottwald v Sebert*, 193 AD3d 573, 579

(1st Dept 2021), *rev'd on other grounds at* 2023 NY Slip. OP 03183 (2023).

42.     Moreover, upon information and belief, to the extent Defendant White did not make up the claim that Danie was dead from whole cloth, she heard it on right wing conspiracy theory message boards — sources that no reasonable journalist would take at face value without verifying.

43.     In sum, Defendant White has consistently and deliberately omitted facts she knows to be true from her videos.

44.     In short, White knew for a fact — beyond any shadow of a doubt — that Danie was alive following the message exchange and journalistic diligence described above.

45.     On or about, August 15, 2022, Defendant White posted a video titled "Exposing Eli Erlick: Trans Predator (w/ Leaked Texts, DMS)", https://www.youtube.com/watch?v=z-o8iBeTnzM (the "Video").

46.     In the Video, Defendant White states that "Danie [] made multiple allegations against Eli, including sexual abuse, ***she has since taken her own life. She has since committed suicide.***" Video at 00:06:20-00:06:50 (emphasis added).

47.     In the Video, Defendant White also addresses a post from August 12th by Alejandra Caraballo, stating, "Alejandra, there's this little thing called priorities. How about before you sympathize with someone who's getting death threats online for being a rapist, having a legal drug trafficking scheme aimed at minors... maybe before you speak up and care about whether she's getting death threats or not you care about the children, ***the rape victims - if not all the rape victims maybe***

***just the one that committed suicide***. Fuck you." Video at 00:12:47-00:13:07

(emphasis added).

48.     Defendant White made these statements despite knowing that "the one

that committed suicide" — that is, Danie — was alive at the time White made the

Video.

49.     Put differently, Defendant White knew — or at a bare minimum, acted

with a reckless disregard of and having willfully blinded[1] herself to — the fact that

50.     As of January 14, 2023, this video has 526,839 views on YouTube.

51.     Defendant White was fully aware of the harmful effects of these

statements on Ms. Erlick's reputation, stating early in the video, "Now, I know I've

done videos on a ton of really awful people on this channel, this one's going to take

the cake. This is gonna go down in history, this is one of the absolute worst, if not

the worst. Actually, it's the worst." Video at 00:00:30-00:00:40.

52.     Beyond the case-specific intent, Defendant White has a pattern and

practice of acting with reckless disregard to the truth (if not intentionally stating

falsehoods), for personal benefit.

53.     That pattern and practice was also at work in this case, and also

demonstrates Defendant White's intent.

54.     On September 27, 2020, Defendant White uploaded a video titled

"Trans Athlete: 'I Belong In Women's Sports, Get Over It!'", now unavailable, as

reported by *Insider.com*.  ([https://www.insider.com/blaire-white-apology-](https://www.insider.com/blaire-white-apology-)

---

[1] As the Supreme Court has explained, a showing of willful blindness suffices to show intent
generally.  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011).

transphobic-video-janae-marie-kroc-transgender-bodybuilder-2020-10).

55.     In that video, *Insider.com* reports that "White featured a segment about a transgender female bodybuilder and powerlifting champion named Janae Marie Kroc, who White accused of competing with cisgender women" and that "White also falsely claimed that White[sic] has 'gone back and forth competing with men and women.'"

56.     On the same day, September 27, 2020, Kroc responded on Instagram, saying, "all of the records I have broken and all of the championships that I have won in powerlifting were prior to my transition when I was still competing in the men's division. ***I have also been very vocal about the fact that I have never competed as a woman and have no intention of doing so in the future.***" (emphasis added).

(https://www.instagram.com/p/CFqcoC5AA0p/?utm_source=ig_embed&ig_rid=0d8ca4fc-a728-4636-a0df-515490aa1fac)

57.     In the same article, *Insider.com* reports that "Kroc also commented on White's YouTube video, writing 'I really wish you had reached out to me before making a video including me and spreading a bunch of misinformation,' and White appeared to have deleted the comment after it became the top comment under the video." (https://www.insider.com/blaire-white-apology-transphobic-video-janae-marie-kroc-transgender-bodybuilder-2020-10).

58.     After leaving the video up for two weeks, Defendant White wrote an apology, saying "'I made the mistake of not doing enough research and taking

rumors about her at face value, which is something I complain about happening to me.' She also announced she would be taking a break from social media and said the video was not 'intentional deception.'" (https://www.insider.com/blaire-white-apology-transphobic-video-janae-marie-kroc-transgender-bodybuilder-2020-10).

59.     This pattern and practice did not, however, stop with the break.

60.     Rather, Defendant White continues the pattern of targeting transgender people for vicious, false criticism.

61.     And, as indicated above, White published the comments at issue in this case even after "doing enough research" — that is, simply following the link in the message from Ms. Erlick — and knowing the claim that Ms. Erlick caused Danie's death was definitionally untrue (because Danie was alive).

**Statements at Issue**

62.      Under New York law, a defamation plaintiff must plead the statements at issue verbatim.  CPLR 3016.

63.     For clarity, then, the following statements are the statements directly at issue — with the specific defamatory words at issue in bold.  The context and other details of the statements are alleged above.

64.     **Statement 1:** "Danie [] made multiple accusations against Eli including sexual abuse, ***she has since taken her own life.  She has since committed suicide***." Video at 00:06:20-00:06:50 (emphasis added).

65.     **Statement 2:** "Alejandra, there's this little thing called priorities. How about before you sympathize with someone who's getting death threats online

for being a rapist, having a legal drug trafficking scheme aimed at minors... maybe before you speak up and care about whether she's getting death threats or not you care about the children, ***the rape victims - if not all the rape victims maybe just the one that committed suicide***. Fuck you."  Video at 00:12:47-00:13:07 (emphasis added).

66.  **Statement 3:**  "Eli is a self-admitted rapist. ***One alleged victim even \*took her life afterward\*.***" See Blaire White, @MsBlaireWhite, *Twitter*, August 15, 2022.  Available online at

https://twitter.com/MsBlaireWhite/status/1559253425782767618 (last accessed February 4, 2023).

67.  Finally, the gist — the defamatory thrust and sting — of the statements is that Plaintiff caused Danie's death.

68.  Defendant White herself says as much in Statement 2, literally saying "if not all" the accusations were significant, someone should ***at least*** pay attention to "just the one that committed suicide" (emphasis added).

69.  Plaintiff Erlick has suffered harm as a result of Defendant White's statements, including, but not limited to significant (so-called "garden variety") emotional distress and facing increased (disgusting, hateful, and violent) harassment from people who believed Defendant White's statement that Ms. Erlick caused Danie's death.

## COUNT I
*(Defamation per quod)*

70.     Plaintiff incorporates by references all the allegations above.

71.     Defamation consists of "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se." *Frechtman v Gutterman*, 115 AD3d 102, 104 (1st Dept 2014).

72.     As described above, Defendant White falsely stated that Danie had "taken her own life," and falsely stated that Plaintiff ***caused*** that death.

73.     Defendant White's statements were untrue and defamatory in that they falsely reported that Danie is deceased, and in that a reasonable person would infer Defendant White's statements to mean that Ms. Erlick had caused that death.

74.     Whether or not Danie is alive is an assertion of fact.

75.     Defendant White knew or should have know that such defamatory statements were false.

76.     Defendant White published the statements to hundreds of thousands of people.

77.     Defendant White's statements have harmed Ms. Erlick's professional reputation and standing in her industry, have caused her economic harm, have caused her to incur special damages in the form of actual pecuniary loss, including lost income, benefits, job security and opportunities for career advancement, and have caused her embarrassment humiliation and emotional injury.

78.     As a direct and proximate result of Defendant White's defamation, Ms.

Erlick has suffered, and continues to suffer, from humiliation, loss of standing in the community, loss of self-esteem and public esteem, public disgrace and emotional distress.

79.    As a direct and proximate result of Defendant White's conduct, Ms. Erlick has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

80.    Defendant White's defamatory statements were malicious, willful, wanton, and done with reckless disregard for Ms. Erlick's rights. As such, Ms. Erlick is entitled to an award of punitive damages.

## COUNT II
*(Defamation per se)*

81.     Plaintiff incorporates by references all the allegations above.

82.    As set out in Count I, Defendant's statements constitute defamation per quod.

83.    Plaintiff incorporates the allegations specifically from Count I in the interest of avoiding duplication.

84.    The statements above are clearly and reasonably susceptible to the meaning that Plaintiff caused Danie's death.

85.    The statements alleged above constitute defamation per se because ***causing the death of another constitutes a serious crime***.

86.     The crime Plaintiff accused Defendant of would be, at a minimum, manslaughter, if not murder or some form of murder.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a) Issue a declaratory judgment that Defendant is liable for defamation;

(b) Award Plaintiff her damages, and appropriate interest, in an amount to be determined by a jury at trial, but in no event less than $75,001.00;

(c) Award Plaintiff punitive damages;

(d) Grant Plaintiff her routine costs and expenses as a prevailing party;

(e) Grant any other and further relief that the Court may determine to be necessary and proper

Dated:  August 30, 2023.

Respectfully submitted,

/s/

_____

J. Remy Green
**COHEN&GREEN P.L.L.C.**
1639 Centre Street, Suite 216
Ridgewood, New York 11385
(929) 888.9480 (telephone)
(929) 888.9457 (facsimile)
remy@femmelaw.com