UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELI ERLICK

       *Plaintiff,*

    v.

BLAIRE WHITE,

       *Defendant.*

23-cv-1017 (AT)

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND CROSS MOTION FOR LEAVE TO AMEND**

**COHEN&GREEN P.L.L.C.**
J. Remy Green
1639 Centre St., Suite 216
Ridgewood, New York 11385
t : (929) 888-9480

October 27, 2023

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. ii

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL HISTORY .................................................................................................................. 2

STANDARDS OF REVIEW ........................................................................................................ 6

ARGUMENT ................................................................................................................................ 6

    I.    Defendant's Motion Only Challenges Three Elements of the Claim, and Slightly Confuses the Applicable Law. ........................................................................................................ 6

    II.    Plaintiff Did Not Sue over "Abuse" Comments because they are Pure Opinion .............. 7

    III.    Defendant's Actual Malice Argument Fails ................................................................. 9

        A.    Defendant's argument on actual malice requires the Court to ignore the actual FAC. 9

        B.    The FAC pleads actual malice through willful blindness, and White waived her right to seek dismissal of that theory. ............................................................................................... 10

    IV.    Defendant's Injury Arguments Fail — and to the Extent they Do Not, the Court Should Grant Leave to Amend. ................................................................................................... 11

        A.    Defendant's arguments on injury as such fail, and in any event, the Court should allow amendment. ...................................................................................................................... 11

        B.    Defendant's defamation per se arguments fail. ................................................... 12

    V.    Defendant's "Regarding the Plaintiff" Argument is Fundamentally Misguided .............. 14

CONCLUSION ........................................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................. 6, 10

*Butowsky v. Folkenflik*,
    2019 U.S. Dist. LEXIS 104297 (E.D. Tex. Apr. 17, 2019) ....................................................... 12

*Case, et al. v. City of N.Y., et al.*,
    233 F. Supp. 3d 372 (SDNY 2017) ........................................................................................ 6, 9

*Cohen v. Meyers*,
    175 Conn. App. 519, 167 A.3d 1157 (2017) ............................................................................. 13

*Davis v. Boeheim*,
    24 N.Y.3d 262 (2014) ................................................................................................................. 8

*DiFolco v. MSNBC Cable LLC*,
    622 F.3d 104 (2d Cir. 2010) ........................................................................................................ 6

*Gallagher v. N.Y. State Bd. of Elections*,
    477 F. Supp. 3d 19 (S.D.N.Y. 2020) ........................................................................................ 11

*Gjergjani v. Ware*,
    No. 4:14-CV-00448-ALM, 2016 U.S. Dist. LEXIS 116461 (E.D. Tex. Aug. 8, 2016) .............. 13

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ............................................................................................................. passim

*Mignogna v Funimation Prods., LLC*,
    2022 Tex. App. LEXIS 6087 (Tex Ct App Aug. 18, 2022) ........................................................ 8

*Rattray v. City of Nat'l City*,
    51 F.3d 793 (9th Cir. 1994) ...................................................................................................... 10

*Reppucci v Salem News Publ.*
    *Co.*, 1994 Mass. Super. LEXIS 56, at *9 (Oct. 13, 1994) ........................................................... 8

*Rosado v Daily News, L.P.*,
    2014 NY Slip Op 33736[U] (Sup Ct, NY County 2014) ........................................................... 8

*Sandals Resorts Intl. Ltd. v Google, Inc.*,
    86 AD3d 32 (1st Dept 2011) ...................................................................................................... 8

*Shamir v. City of N.Y.*,
    804 F.3d 533 (2d Cir. 2015) ............................................................................................................. 6

*St. Amant v Thompson*,
    390 US 727 (1968) ................................................................................................................. 4, 10

*Swartz v. DiCarlo*,
    No. 1:12CV3112, 2017 U.S. Dist. LEXIS 51157 (N.D. Ohio Mar. 31, 2017) .............................. 13

*Tardif v. City of New York*,
    991 F. 3d 394 (2d Cir. 2021) ........................................................................................................ 11

*Torain v Liu*,
    279 F App'x 46 (2d Cir. 2008) ....................................................................................................... 8

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ........................................................................................................................ 6

N.Y. Civ. R. L. § 76-a ....................................................................................................................... 7

**PRELIMINARY STATEMENT**

As with all defamation cases, this case concerns specific statements. Defendant Blaire White — a self-described journalist — accused Plaintiff Eli Erlick of causing the death of an ex-partner. There's only one problem: Erlick's ex was and is still alive.

The First Amended Complaint (ECF No. 26, "FAC") unambiguously pleads that White knew as much — and to the extent she claims she did not, it is the obvious result of an ostrich-like head burial. There are few things in the world that are completely, objectively verifiable. But whether or not someone is *dead* tends to be one of them. And deliberately spreading the mistruth that Erlick caused someone's death — that is, in plain language, that Erlick killed them — is about as classic as a defamation claim gets. While White hopes this gist is lost on the Court, to be clear, it certainly was not lost on White's audience. They got it. As they put it, White said Erlick "*ma[d]e [Danie] kill them[]self.*" Green Ex. 1 ¶ 69(e)(i). White's responses in her motion simply do not carry her burden in arguing otherwise.

Likewise, Plaintiff's cross-motion seeks to fill out the detail on the death threats, harassment, and downright horrific abuse she has received *because* of White's mistruths. This is a motion to dismiss, and the complaint unambiguously alleges a classic case of defamation: White accused Erlick of killing someone who White knew was still alive. Now, perhaps White will ultimately show that some allegation or another in the complaint is ill-founded. Perhaps not. But for now, the complaint plausibly alleges that White in fact knew that Eli's ex-partner was not dead, but chose to go ahead and accuse Erlick of causing that (non-)death. And predictably given White's massive, angry audience, that accusation caused Erlick significant harm. No more is required to meet the standard, which is merely to nudge a claim across the line to plausibility.

1

## FACTUAL HISTORY

*The Statements at Issue.*

This defamation case concerns three statements (*see* CPRL 3016 (requiring verbatim pleading of statements at issue)).  For quick context (with more below), Plaintiff Eli Erlick used to date someone named "Danie."  Defendant White accused Erlick of causing Danie's death.  The three statements are:

**Statement 1:** "Danie [] made multiple accusations against Eli including sexual abuse, she has since taken her own life. She has since committed suicide."

**Statement 2:**  "Alejandra, there's this little thing called priorities. How about before you sympathize with someone who's getting death threats online for being a rapist, having a legal drug trafficking scheme aimed at minors... maybe before you speak up and care about whether she's getting death threats or not you care about the children, the rape victims - if not all the rape victims maybe just the one that committed suicide. Fuck you."

**Statement 3:**  "Eli is a self-admitted rapist. One alleged victim even *took her life afterward*."

FAC ¶¶ 64-65.  In these conversations, as White emphasized, what was most important — the thrust and gist of the statements — was, if "not all the rape victims[, then] maybe just the one that committed suicide." *Id*.  Likewise, the context here implies White has special access to information: while White qualifies that the victimhood is "alleged" (and therefore, as explained below, the "rapist" label becomes non-actionable opinion based on disclosed facts), she is clear that "committed suicide" is a *fact*, not an just an "allegation" or "accusation." *Id*.

*Background on Blaire White Relevant to the Motion.*

Blaire White describes herself as a journalist.  FAC ¶ 4.  She holds herself out as complying with basic journalistic standards.  *Id* ¶ 5.  And she does, in fact, do that diligence.  *Id*. ¶ 6.  But — as happened here — she also has a tendency to not let the facts get in the way of starting a good pile-on.  *Id*. ¶ 7.  And trans people like Plaintiff Erlick frequently find themselves in White's vicious crosshairs.  *Id*. ¶ 15.  When picking out those targets, White has a pattern and practice of simply throwing even the most basic regard for truth out the window.  FAC ¶ 52.

2

For example, in September 2020, White published a video about a transgender woman who is also a powerlifting champion named Janae Marie Kroc.  FAC ¶ 45.  In the video, White simply invented the claim that Kroc "has 'gone back and forth competing with men and women.'"  *Id.* ¶ 55.  Kroc commented on the matter, making clear, "all of the records I have broken and all of the championships that I have won in powerlifting were prior to my transition when I was still competing in the men's division. I have also been very vocal about the fact that I have never competed as a woman and have no intention of doing so in the future."  FAC ¶ 56.  And Kroc also commented on White's YouTube saying something similar, and saying "I really wish you had reached out to me before making a video including me and spreading a bunch of misinformation."  *Id.* ¶ 57.  Showing that she understood exactly what she was doing **White deleted the comment, but left the video up unaltered for two weeks**.  *Id.* ¶¶ 57-58.

Then, White pretended she'd learned from the incident:  in an apology, she said, "I made the mistake of not doing enough research and taking rumors about her at face value, which is something I complain about happening to me," claiming — notwithstanding that she left the video up for weeks — that the invented claim was not "intentional deception" (tacitly admitting it was deception nonetheless).  *Id.*

**The Lead Up to the Statements at Issue, and White's State of Mind.**

At some point in August 2022, White decided to create a video attacking Erlick.  FAC ¶ 16.  As part of the basic journalistic diligence she was conducting, White — as any journalist would do — asked Erlick for comment.  *Id.*  Specifically, White suggested she was going to do a story about an accusation Erlick was going to "illegally give children drugs"[1] and "allegations of sexual abuse."  *Id.* ¶

---

[1] That description is somewhat flattening.  Erlick was responding to the still crashing wave of laws barring basic, standard-of-care treatment for transgender children — a trend that study after study has said will (if allowed to proceed) lead to countless suicides and other poor outcomes.  Perhaps a good metaphor, since it too is a hormone, would be a person offering to ship insulin to children with diabetes in states that forbid its use.  That said, this suit does not wade into those waters.

3

17. Erlick responded by noting among other things that the allegations were ultimately retracted, and linking a summary that confirmed (among other things) that the person making the accusations (Danie) was alive. *Id.* ¶ 18-24. White reviewed the page, and understood Danie was alive. *Id.* ¶¶ 22-24.

Also clear from the page, as to the underlying claim of "abuse," White reviewed and understood that Danie had stated they previously engaged in "chronic lying." FAC ¶¶ 34-36. *Accord, St. Amant v Thompson*, 390 US 727, 732 (1968) (noting actual malice "may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports"). White also reviewed further messages where Danie described how they "lied [them]self into" various situations. *Id.* ¶ 37. And beyond that, White also reviewed Erlick's offer to share — if the above was not enough — "*a screenshot of Danie threatening to publicly accuse me of rape and abuse if I didn't give them money.*" FAC ¶ 37. White never asked. *Id.* ¶ 38. But White and Ms. Erlick exchanged several more messages before the conversation concluded, demonstrating that Defendant White had seen the message and linked information described above. FAC ¶ 19.

Given the above, before publishing, literally any journalist would do *some* diligence. Indeed, that's exactly the kind of thing White (nominally) promised to be better about after the Kroc incident. Expert witnesses will confirm that before reporting on a death (absent some extraordinary circumstance not applicable here), any journalist would confirm that the person *is, in fact, dead.* FAC ¶ 27. And, as pled in the complaint on information and belief, White *did* in fact do that diligence. For a journalist not to, that would be the equivalent of willfully blinding one's self to the truth — which the Supreme Court has held is another way to show knowledge across areas of law. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011). Any journalist would — and the FAC pleads White, in fact, did — do things including, but not limited to checking voter registrations, checking social media, and checking death rolls. FAC ¶¶ 26-29.

4

Here's what White's diligence in fact showed (or would have shown). FAC ¶¶ 26. Danie was registered to vote in Oregon in 2023 — after they were supposedly dead:



FAC ¶ 30. The FAC pleads White discovered that fact. *Id.* Likewise, Danie was active on social media after their supposed death:



FAC ¶ 31. The FAC pleads White discovered that fact too. *Id.* And had — and upon information and belief, when —White checked death rolls, she would not have been able to confirm, and in fact did not confirm, Danie's death. *Id.* ¶ 32. In short, to paraphrase, whatever rumors White *may*

5

claim she has relied on,[2] before publishing, she very much knew such rumors of Danie's demise were greatly exaggerated.

## STANDARDS OF REVIEW

The applicable federal rules require only that a plaintiff plead "a short and plain statement of the claim" to entitle them to discovery. *See* Fed. R. Civ. P. 8(a)(2). *See also, e.g.*, *Shamir v. City of N.Y.*, 804 F.3d 533, 556 (2d Cir. 2015). Under that standard of review, the Court must accept as true all plausibly pled allegations in the complaint and draw all reasonable inferences in Plaintiff's favor. *See, e.g.*, *Case, et al. v. City of N.Y., et al.*, 233 F. Supp. 3d 372, 382 (SDNY 2017) (citing cases). If the allegations in the pleadings sufficiently "raise the right to relief above the speculative level," dismissal is inappropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Along with the complaint's allegations, the Court "may consider … documents attached as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC,* 622 F.3d 104, 111 (2d Cir. 2010).

## ARGUMENT

### I. Defendant's Motion Only Challenges Three Elements of the Claim, and Slightly Confuses the Applicable Law.

Defendant White's recitation of the law misses some forest for the trees, though it largely lands on the right general standard. To state a defamation claim under New York law, a plaintiff must plead "(1) a defamatory statement of fact, (2) regarding the plaintiff, (3) published to a third party, (4) that is false, (5) made with the applicable level of fault, (6) causing injury, and (7) not protected by privilege." ECF No. 29 ("DMOL") at 3 (*quoting Egiazaryan v. Zalmayev*, No. 11 Civ. 2670(PKC),

---

[2] The FAC also pleads that "to the extent Defendant White did not make up the claim that Danie was dead from whole cloth, she heard it on right wing conspiracy theory message boards — sources that no reasonable journalist would take at face value without verifying." FAC ¶ 42.

2011 WL 6097136, at *3 (S.D.N.Y. Dec. 7, 2011)).  White seems to concede (through silence) that, for pleading purposes, the statements at issue are statements of fact (1), published to third parties (3), that are false (4), and are not covered by an absolute privilege (7).  She disputes, in order, that Plaintiff has pled the right degree of fault (Points III(A) and IV), that Plaintiff has pled injury (Points III(B) and (C)), and that the statements are concerning Plaintiff (Point V).

Defendant ultimately ends up in a small rabbit hole over public figure status (Point II) because she misses that (1) that point is conceded (*see* Green Ex. 1 (the first letter under the Court's rules, noting Plaintiff is "not disputing whether Plaintiff … is a public figure")); (2) New York law has other applicable triggers that unambiguously make this an actual malice case anyway.  For example, since causing the death of another person is unambiguously an "issue of public interest," and Defendant's statement was made in public, N.Y. Civ. R. L. § 76-a requires actual malice anyway.[3]  Likewise, the so-called common interest privilege would likely require actual malice, because the statements at issue were made by and between people with an interest in them if they were true.  Thus, Defendant's confusion results in a chunk of her brief that is not necessarily relevant (*see,* n. 5 below).

## II. Plaintiff Did Not Sue over "Abuse" Comments because they are Pure Opinion.

Plaintiff's comments and arguments surrounding the fact that "Plaintiff has not alleged that any of Blaire's statements discussing Danie's allegation of sexual abuse against Plaintiff" (DMOL at 2) miss why.  The reason is that, in short, those statements are unambiguously opinion[4] — or, at a bare minimum in the context of the conversation, opinion based on disclosed facts.  Court after court has

---

[3] Indeed, defamation per se claims involving accusations of crimes likely have a complete overlap with the new version of N.Y. Civ. R. L. § 76-a.  That is, because the commission of a crime is almost certainly always an issue of public interest, and N.Y. Civ. R. L. § 76-a applies to cases that involve either public statements on issues of public interest; or any other conduct at all connected to free speech in connection with issues of public interest, it is hard to imagine a situation where the "actual malice to be proven" requirement does not apply for the accusation that someone committed a crime.

[4] It is admittedly strange for a defamation plaintiff to be in the position of explaining why certain statements are opinion.  But because Defendant White argues, essentially, that the significance of Plaintiff not suing over these statements

7

found that accusing someone of being "sexually abusive" or similar things is pure opinion. *See, e.g., Torain v Liu*, 279 F App'x 46, 47 (2d Cir. 2008) (given context, "pedophile" was opinion); *see also, Rosado v Daily News, L.P.*, 2014 NY Slip Op 33736[U], *4 (Sup Ct, NY County 2014) ("sexual predator" is opinion); *Reppucci v Salem News Publ. Co.*, 1994 Mass. Super. LEXIS 56, at *9 (Oct. 13, 1994) ("abuser of women" is opinion); *Mignogna v Funimation Prods., LLC*, 2022 Tex. App. LEXIS 6087, at *16 (Tex Ct App Aug. 18, 2022) ("Calling someone a 'sexual predator' falls within the broader principle that a speaker's individual judgment that rests solely in the eye of the beholder is mere opinion"). New York appellate courts have cautioned that what counts as opinion is particularly broad online, given the nature of online discussions. *Sandals Resorts Intl. Ltd. v Google, Inc.*, 86 AD3d 32, 41-43 (1st Dept 2011).

Moreover, those accusations were in the context of giving a source for the accusation (Danie), what Plaintiff did was publish (as she herself puts it) "a response to that allegation" (DMOL at 1), and allowed the viewer to evaluate for themselves what weight to give that accusation. With that context, New York law plainly precludes liability for such an opinion based on disclosed facts. *Davis v. Boeheim*, 24 N.Y.3d 262, 269 (2014). That is, the context here strongly suggests even the "rapist" label is an opinion here.

That difference also shows why the accusation of causing Danie's death is different: Plaintiff did not provide a disclosed basis for that claim (and obviously, if Danie were dead, the source couldn't be Danie). Rather Plaintiff did exactly what takes the case *out* of the "disclosed facts" exception—she "spoke with authority" and gave the impression that her "statements were based on facts," and "factual details unavailable to the public" at that. *Davis*, 24 N.Y.3d at 272-73.

With all of that said, if Defendant argues that the sexual abuse allegations are *not* opinion based on disclosed facts — and are, instead, statements of fact with a potentially defamatory sweep (perhaps in arguing that these statements somehow bar damages from other statements) — Plaintiff

8

seeks leave to amend to add a theory of liability for these statements as well, relying on the estoppel effect of that assertion.

## III. Defendant's Actual Malice Argument Fails.[5]

As set out above, Plaintiff's theory of actual malice is quite simple: White either ***actually knew***, or must have taken unusual measures to avoid learning, that Danie was not dead. *See generally,* FAC ¶¶ 20-44. As to the second part (that is, willful blindness), the Supreme Court has held, across a variety of areas of law, that is sufficient to show actual knowledge. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011).

### A. Defendant's argument on actual malice requires the Court to ignore the actual FAC.

To push back against actual malice as pled, White must re-write the complaint. But contrary to White's version, the complaint does not merely contain "[t]he bare allegations that Plaintiff told Blaire that the allegedly defamatory statement was false." DMOL at 8.[6] Rather, it sets out a plausible basis to conclude White ***in fact*** took the most basic journalistic steps to find out whether Danie was actually dead. Part of those allegations is the premise that it is hard to believe that White, as a journalist, took absolutely no steps — not even the bare minimum — to confirm Danie was dead. Another part is that if White genuinely failed to take those steps, it would be willful blindness. But either way, to take Defendant's argument seriously, the Court would need to simply toss out much of the FAC (and, specifically, ¶¶ 22-44). Since it cannot do so on a motion to dismiss (*see, e.g., Case,* 233 F. Supp. 3d at 382), that argument fails.

Finally, to be sure, it is more than passing strange that as a journalist, White is arguing it is not even ***plausible*** she would check if someone was dead before reporting they'd died. It is hard to

---

[5] Since Plaintiff has conceded actual malice applies, she does not address Defendant's alternative argument (Point IV) about the lower, gross negligence standard.
[6] Defendant's seeming complaint that the messages themselves do not discuss Danie's (non-)death (DMOL at 8) is ill-founded, since White did not actually ask for a comment on a prospective story that Erlick killed Danie—instead, White only asked for a comment about "allegations of sexual abuse" and no more. FAC ¶ 17.

imagine any journalist saying that's not *plausible*.  But that is genuinely what's happening here.  Given that absurdity, certainly, the FAC more than adequately pleads facts that "nudge[]" the claim that White actually did *some* basic diligence before making the high production value video where she claimed Erlick caused Danie's death "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Indeed, it alleges the details of that diligence.  And that is all that's necessary.

### B. The FAC pleads actual malice through willful blindness, and White waived her right to seek dismissal of that theory.

The FAC explicitly pleads actual knowledge and willful blindness in the alternative.  *See, e.g.,* FAC ¶¶ 49; 49 n. 1, *citing Global-Tech*, 563 U.S. 754 (2011).  And given that, along with the motion as filed, the Court can and should find that White has waived her arguments on willful blindness.

Willful blindness is a higher standard than "recklessness," which appears in the Supreme Court's formulation of the actual malice standard.  *St. Amant v Thompson*, 390 US 727, 732 (1968).  And sometimes, courts even use "willful blindness" in place of "recklessness" completely.  *See, e.g., Rattray v. City of Nat'l City*, 51 F.3d 793, 801 (9th Cir. 1994).  *See also, e.g., Harte-Hanks*, 491 U.S. at 692 (same with "purposeful avoidance").  Moreover, willful blindness can suffice in most contexts to even show *actual* knowledge, because — as the Supreme Court has explained — people who take the steps to avoid learning facts "in effect have actual knowledge of those facts." *Global-Tech*, 563 U.S. at 766.

Here, the FAC pleads that if White did *not* take the most basic steps to figure out if Danie was alive, that was a deliberate choice.  If White didn't bother to do the most basic diligence anyone publishing a high production value video would, it is because White knew *exactly* what she would find if she did so. *See, e.g.,* FAC ¶¶ 49; 25-42.  That is, the FAC pleads the following:

- White was told and read that Danie was alive.  FAC ¶¶ 19; 23-24.

- White did not bother asking directly about Danie's supposed death.  FAC ¶ 17.

10

- White knew and believed that the *core* — the "if nothing else, this" so to speak — of the story she was publishing was the accusation that Erlick caused Danie's death.  *See, e.g.,* FAC ¶¶ 67-68.

- White publicly promised to do basic factual diligence in videos before, after being caught failing to do so.  FAC ¶¶ 54-58.

- The most basic competence in White's job would be to do basic diligence before reporting a death.  FAC ¶¶ 25-27.

- That diligence would have been extremely, extremely easy, and would have shown Danie was alive.  FAC ¶¶ 28-32.

With each of these facts proven, a jury could reasonably conclude that the reason White *did not* do the most basic diligence is that she knew it would destroy the core of her accusation — that Erlick caused someone's death.  That is, that White was willfully blind.

Yet, Plaintiff's motion does not address willful blindness at all.  The phrase appears nowhere in the memo.  *See generally,* DMOL.  Nor do its variants — purposeful avoidance (*Harte-Hanks*, 491 U.S. at 692), and so on.  And while the FAC clearly cites and makes clear it will proceed on a *Global-Tech*-style willful blindness claim, neither the case nor the concept appear anywhere in Defendant's motion.  As this Court has previously found, such a failure to engage with the opposing party's argument can (and should) be taken as a concession.  *Gallagher v. N.Y. State Bd. of Elections*, 477 F. Supp. 3d 19, 48 n.4 (S.D.N.Y. 2020).  Nor can Defendant make that argument for the first time on reply.  *Tardif v. City of New York*, 991 F. 3d 394, 404 n.7 (2d Cir. 2021).  So, the Court can and should deny Defendant's motion because willful blindness is the same thing as knowledge (*Harte-Hanks*, 491 U.S. at 692; *Global-Tech*, 563 U.S. at 766), and Defendant does not present any argument the Court can dismiss the willful blindness theory.

**IV. Defendant's Injury Arguments Fail — and to the Extent they Do Not, the Court Should Grant Leave to Amend.**

    **A. Defendant's arguments on injury as such fail, and in any event, the Court should allow amendment.**

11

Defendant reaches far outside the pleadings to argue Plaintiff has not been injured. DMOL at 10-11. Putting aside that this is impermissible, Defendant's arguments ignore the serious harm her statements obviously caused. Having some few television appearances in no way makes up for being accused of causing the death of a romantic partner. And while measuring that harm is hard, the complaint plausibly pleads it *is harm*.

In the alternative, however, the Court should grant leave to amend so Plaintiff can add some of the details of the deluge of abuse she received because of Defendant's statements. A few examples should suffice to show what Plaintiff has endured:

> "i hope you die a painful death. may you get prostate cancer and be reminded everyday that you are and will always be male. A gross male. […] you will never be a woman, you filthy male abomination."

> "this is one of the most VILE, DISGUSTING, AND JUST FRANKLY DISTURBING cases that i have ever heard of in my entire LIFE. Eli deserves to be rot in prison for 100 years! dont even put her in a male or female prison. she deserves to be in solitude for the rest of her life. she is a danger to the lgbtq community and vulnerable young women!!! absolutely disgusting. so utterly disgusting. that poor girl who killed herself i actually started tearing up"

> "Wow, this person is actually evil. This is sadistic beyond belief. And one of their victim's killed themselves?! I have no words…Get this person ASAP - with fellow males! No more women to rape"

> "Street justice or hanging from the trees needs to be done"

Green Ex. 2 ¶¶ 69(a)-(e). And these comments often make clear that — like White herself — the person attacking Plaintiff understands the gravamen of what is wrong is the Erlick caused Danie's "death." These threats and harassment alone easily cross the bar required to plausibly allege injury, and they directly grow out of Defendant's conduct. *See Butowsky v. Folkenflik*, 2019 U.S. Dist. LEXIS 104297, at *46 n.13 (E.D. Tex. Apr. 17, 2019) (rejecting challenge to *per se* theory, but also noting that receiving death threats among other things would suffice to show harm on a *per quod* theory).

### B. Defendant's defamation per se arguments fail.

12

Putting the above aside, Plaintiff's claim also sounds in defamation *per se* — which is an independent reason to deny Defendant's motion as to injury.  As the FAC sets out, the statements at issue "constitute defamation per se because **causing the death of another constitutes a serious crime.**"  FAC ¶ 85 (emphasis in original).  Causing another's death is, in fact, defamation per se, and Defendant fails to cite a single case saying otherwise.  *See* DMOL at 11-13, *but see Swartz v. DiCarlo*, No. 1:12CV3112, 2017 U.S. Dist. LEXIS 51157, at *9 (N.D. Ohio Mar. 31, 2017) (accusing "Plaintiffs of [among other things] giving Vilma medical power of attorney **in order to cause Henry's death** for their benefit are defamation per se") (emphasis added); *Gjergjani v. Ware*, No. 4:14-CV-00448-ALM, 2016 U.S. Dist. LEXIS 116461, at *11 (E.D. Tex. Aug. 8, 2016) (statements accusing Plaintiff of "**causing the death** of a former co-worker" are defamation per se) (emphasis added); *Cohen v. Meyers*, 175 Conn. App. 519, 521, 167 A.3d 1157, 1162 (2017) ("trial court properly ruled in favor of M on his defamation claim, that court having found that the plaintiff's statements … that M had **caused the death of a customer** … were defamatory per se") (emphasis added).

Indeed, Defendant's audience obviously understood the statements that way, characterizing the video as follows:  "a Trans rapist : it's fine if I make them kill them self."  Green Ex. 3 ¶ 69(e).  Another commenter was clearer:  "[an] Anagram of 'Eli Erlick' is … 'Killer'"  *Id.*  As was another, adding a political flavor this time:  "Trans person: I just killed 20 people. Democrat Prosecutors: Nothing to see here, folks. Move along !!!!"  *Id.*

That there might be some difficulties in proving causation if a DA actually attempted to bring a prosecution — which is, essentially, White's argument here (DMOL at 12-13) — is neither here nor there.  All that means is that Defendant's theory of how Plaintiff was morally culpable in Danie's (supposed) death was a bit leaky.  But it is clear Defendant's audience understands exactly what Defendant was saying:  What matters in the statement is that it says Erlick caused Danie's death.  And that came across in the statement.  White cites no cases saying that the accusation of

13

committing a serious crime must present a theory that would be ultimately viable to prosecute, because that is simply not the law.

Moreover, Defendant's argument here doesn't fully hold together. White's accusation, if *fully* proven, would be actionable as manslaughter. What White emphasizes herself in the statement is, essentially to say, look, even if these other accusations are bad, the one with the death is really bad, because the death causally proves how bad the abuse is. FAC ¶ 68. That is, what makes "just the one that committed suicide" significant *is* the connection between the suicide and the abuse. Or put differently, White's entire point was to imply causation. As one of her own listeners put it, the entire point of the statement was the accusation that Erlick "*ma[d]e [Danie] kill them[]self.*" Green Ex. 2 ¶ 69(e)(i) (emphasis added). While proof of that link might be realistically difficult, if proven, there is little question that the point of the statements at issue *was to allege that link*. Indeed, a few pages later Defendant herself makes this point: the statements use the death as "illustrating the severity of the abuse." DMOL at 15. Given that, the accusation here is defamation *per se*.

V. **Defendant's "Regarding the Plaintiff" Argument is Fundamentally Misguided.**

It is genuinely unclear what Defendant is arguing when she says, "[t]he allegedly defamatory statements are focused on a third party's conduct in response to Plaintiff and are not 'regarding the plaintiff.'" DMOL at 15. Defendant cites no cases in this section outside of reciting the basic elements of a defamation claim.

But in any event, the statements are unambiguously about Erlick. To start, Defendant's entire video is literally titled, "Exposing Eli Erlick." FAC ¶ 45. The whole of it was concerning Plaintiff. And Defendant herself stresses that the accusation that Erlick caused Danie's (non-)death is *the most important take away* from the video. FAC ¶¶ 67-68. That is, if someone doesn't pay attention to anything else in the video, White herself says pay attention to "just the one that committed suicide." FAC ¶ 65. *That* — White herself says — is the core of "Exposing Eli Erlick."

14

FAC ¶ 45.  The claim now that somehow that core statement, the self-described most important part of the video, does not "concern Plaintiff" (DMOL at 15) is absurd.  White herself said the video was about Erlick, and this accusation was its very heart.

This point was not lost on anyone actually watching the video.  To reiterate, as explained by White's own audience, the connection was quite clear:  White accuses Erlick of having "*ma[d]e [Danie] kill them[]self.*"  Green Ex. 2 ¶ 69(e)(i) (emphasis added).  That is a statement *about Erlick*.  Everyone understood it that way.  So, as held in all the cases cited in Point IV(B) above, it has long been the law that alleging someone caused another's death is a defamatory statement about that person.

## **CONCLUSION**

For all the reasons discussed above, Plaintiff respectfully requests that the Court deny Defendant's motion in full, or in the alternative grant Plaintiff's cross-motion to amend.

Dated:   October 27, 2022
         Queens, New York

                                            Respectfully Submitted,

                                            **COHEN&GREEN P.L.L.C.**

                                            _____/s/_____
                                            **BY:**      J. Remy Green

                                            1639 Centre St., Suite 216
                                            Ridgewood, New York 11385
                                            t : (929) 888-9480

16